## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MARLO PITTMAN,

                Petitioner,

    v.

TIMETHEA PULLEN, Warden of Federal
Correctional Institution at Danbury,
in her official capacity,

            Respondent.

Civil Action No. 3:22-cv-208 (CSH)

**OCTOBER 13, 2022**

## MEMORANDUM AND OPINION ON PETITION FOR WRIT OF HABEAS CORPUS

**HAIGHT, Senior District Judge:**

Petitioner Marlo Pittman, a federal inmate proceeding pro se, brings a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking transfer to home confinement. Following the Court's order to show cause, Respondent ("the Government") moves to dismiss the petition for lack of subject matter jurisdiction and failure to state a claim. Petitioner objects to the motion to dismiss. This opinion resolves the motion.

## I. BACKGROUND

Pittman is incarcerated at the Federal Correctional Institution in Danbury, Connecticut, on a sentence imposed by the U.S. District Court for the Northern District of Georgia. *See* Resp't's Mot. to Dismiss (Doc. 4) at 6; Exh. C (Doc 4-4), at 8–9.[1] Pittman alleges that F.C.I.

---

[1] On August 27, 2018, Pittman pled guilty to money laundering and conspiracy to possess with intent to distribute at least 500 grams of cocaine, and on March 25, 2019, Judge Amy Totenberg of the U.S. District Court for the Northern District of Georgia sentenced him to 204 months of imprisonment followed by eight years of supervised release. Doc. 4 at 5–6. *See also United States v. Pittman*, No. 1:17-CR-0274-AT-2, 2022 WL 2158356, at *1 (N.D. Ga. June 15, 2022) (denying motion to dismiss the indictment).

Danbury has failed to implement adequate measures to respond to the COVID-19 virus and that he has other medical concerns not related to COVID-19. *See* Doc. 1 at 1. Specifically, he has been diagnosed with post-traumatic stress disorder and depression. *Id.* Pittman takes prescribed psychiatric medication that causes several side effects, including confusion, anxiety, and, on multiple occasions, falling out of his top-bunk bed while sleeping. *Id.* He states that he has repeatedly requested to speak with a psychologist or psychiatrist regarding his conditions, but "the only response [he has] received [has been] an increase in dosage of [his] medication." *Id.* Pittman has sought medical attention to address his mental health needs and the medication's side effects, to no avail. *Id.* Separately, he alleges that F.C.I. Danbury went for four days without heat during the months of December 2021 and January 2022 when outside temperatures were below freezing. *Id.* at 2.[2]

With respect to the COVID-19 virus, Pittman alleges that, as of February 2022, "During . . . the last couple of months we have been in unsanitary conditions with no response to our grievances. We have not received any masks, no rubber [g]loves for cleaning, [and] water[ed] down disinfectant." *Id.* at 1–2. He alleges that these conditions led to a scabies outbreak, which was handled improperly. *Id.* at 2. He states that only one test for COVID-19 was administered between October 2021 and early February 2022, and that staff with COVID-19 symptoms continue to work in the prison without being tested for COVID-19. *Id.* Pittman alleges that inmates sleep in an open-barrack dormitory setting, with bunk beds only three feet apart, which "renders it impossible to engage in the necessary social distancing and hygiene required to mitigate the risk of

---

[2] In support of this statement, Pittman attaches a news article citing both an employee at F.C.I. Danbury and Sarah Russell, Professor of Law and Director of the Legal Clinic at Quinnipiac University School of Law. *Id.* at 6–7.

transmission of [COVID-19]." *Id.* In summary, he states that "F.C.I. Danbury has lacked the basic elements necessary to provide constitutional care. It has failed to employ adequate staff, and identify and correct its own failings." *Id.* at 3. He also alleges that F.C.I. Danbury fails to provide grievance forms to inmates upon request and fails to answer grievances when submitted, in a deliberate "machination . . . to prevent exhaustion of administrative remedies[.]" Pet'r's Resp. to Mot. to Dismiss (Doc. 5) at 1.

Finally, Pittman notes his personal details: he is forty-eight years old, owns a house in Georgia, has an offer of employment there, and has three living children with his wife of eleven years. Doc. 1 at 3. Their fourth child, a two-year-old daughter, passed away in 2017, contributing to Pittman's mental health concerns. *Id.* Pittman would voluntarily seek professional psychological care upon release to treat his P.T.S.D. and depression. *Id.* He was convicted of a non-violent offense. *Id.*

Pittman seeks transfer to home confinement under the CARES Act, Pub. L. 116-136, Doc. 1 at 3, and, in his objection to the motion to dismiss, refers to "Eighth Amendment issues with the conditions of [his] confinement" and further requests "all relief possible under this court's jurisdiction[,]" Doc. 5 at 1.

## II. STANDARD OF REVIEW

Respondent moves to dismiss the petition under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Doc. 4 at 1.

A "case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). *See also Salvagno v. Williams*,

No. 3:17-cv-2059 (MPS), 2019 WL 109337, at *6 (D. Conn. Jan. 4, 2019). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citations and internal quotation marks omitted).

Section 2241 grants federal courts jurisdiction to issue writs of habeas corpus to prisoners "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A writ of habeas corpus under § 2241 "is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001). An inmate may challenge under § 2241, for example, "such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001).[3]

In order to withstand a motion to dismiss filed pursuant to Federal Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether a plaintiff has met this standard, the court must "accept[] all factual allegations as true and draw[] all reasonable inferences [from those facts] in the plaintiff's favor." *CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 850

---

[3] Pittman's petition also invokes the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626, and 18 U.S.C. § 3582(c)(1)(A). The PLRA sets limits on a district court's ability to issue prospective relief, preliminary injunctive relief, or a prisoner release order in any civil action with respect to prison conditions but does not independently create a cause of action. 18 U.S.C. § 3582(c)(1)(A) concerns modification of a term of imprisonment once imposed (*i.e.*, compassionate release). These provisions are discussed *infra* at Section III.

F.3d 58, 77 (2d Cir. 2017) (quoting *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015)). The court's review is limited to the "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quoting *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although detailed factual allegations are not required, *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014), mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient, *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

It is well-established that "[p]ro se submissions are reviewed with 'special solicitude,' and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Bloodywone v. Bellnier*, 778 F. App'x 52, 53 (2d Cir. 2019) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006)); *see also Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) ("A document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))). Nevertheless, even in a pro se case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice[,]" and the court furthermore may not "invent factual allegations" a pro se plaintiff has not pleaded. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quotation marks and citations omitted).

### III. DISCUSSION

Pittman bases his petition upon the First Step Act, 18 U.S.C. § 3582(c)(1)(A), and upon the CARES Act, Publ. L. No. 116-136 (March 27, 2020), which Congress enacted in response to the COVID-19 pandemic.

The Government moves to dismiss the petition for lack of subject matter jurisdiction, on the ground that the Court lacks authority to grant the relief Pittman seeks, and for failure to state a claim upon which relief may be granted. *See generally* Doc. 4-1.

Pittman is currently serving a lengthy sentence. This Court's authority to place a prisoner in home confinement is narrowly circumscribed. As I recited in a recent opinion in *United States v. Shakur*,

> "Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed,' 18 U.S.C. § 3582(c); but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). "Because sentences are final judgments, a court may not modify a previously imposed term of imprisonment unless authorized by statute." *United States v. Faul*, No. 3:83-cr-00016, 2021 WL 965311, at *2 (D.N.D. March 15, 2021) (citing Freeman). A defendant asking a district court to modify a previously imposed term of imprisonment bears the burden of demonstrating the court's statutory authority to grant that relief.

*United States v. Shakur*, No. 82 CR 312 (CSH), 2022 WL 3910581, at *2 (S.D.N.Y. Aug. 31, 2022). *See also Green v. Quiros*, No. 3:20-cv-1217 (CSH), 2021 WL 1670293, at *5 n.6 (D. Conn. Apr. 27, 2021) (describing procedural and substantive prerequisites to compassionate release). *Shakur* held that the petitioning prisoner in that case was procedurally barred from invoking the First Step Act, 18 U.S.C. § 3582(c)(1)(A), because his crimes of conviction antedated November 1, 1987. *See* 2022 WL 3910581, at *5.

For a federal inmate, one avenue to home confinement is compassionate release. A dis-

6

trict court may provide compassionate release under 18 U.S.C. § 3582(c)(1)(A), which, as amended by the First Step Act of 2018, "provides that 'in any case' a district court may release a prisoner, on the prisoner's own request (after exhausting administrative remedies) when 'extraordinary and compelling reasons' justify release." *Shakur*, 2022 WL 3910581, at *2. The authority to grant a sentencing reduction or compassionate release under 18 U.S.C. § 3582, however, lies with the sentencing judge. *United States v. Avery*, 807 Fed. App'x 74, 77 (2d Cir. 2020). In this case, that judge sits in the District of Georgia. This Court therefore cannot grant the compassionate release Pittman seeks.

Pittman also invokes the CARES Act, enacted in response to COVID-19. But as Judge Covello wrote earlier this year in a similar case, also arising out of F.C.I. Danbury, "[t]he CARES Act did not create any new rights or judicial remedies for prisoners under section 3624(c)(2). It merely expanded the authority of the BOP to transfer inmates to home confinement under certain conditions. Thus, the CARES Act does not afford the district court the ability to order a prisoner released to home confinement; that authority continues to rest solely with the BOP." *Gordon v. Pullen*, No. 3:22-cv-53, slip op. at 4–5 (AVC) (D. Conn. May 9, 2022) (internal citations omitted). Pittman informs the Court that he has not been released to home confinement despite his medical needs and the low level of risk he poses. However, as the CARES Act itself provides no authority for the district court to order an inmate transferred to home confinement, regardless of the underlying factual circumstances, his invocation of it is inapposite.

Furthermore, the PLRA affirmatively bars the Court from ordering Pittman released to home confinement. Here, as in *Dimartino v. Sage*, No. 3:21-CV-00498 (KAD), 2022 WL 124308, at *5 (D. Conn. Jan. 13 2022), the petitioner "challenge[s] the conditions of [his] con-

finement" and "seek[s] an order granting [him] home confinement or 'any *further* relief' the Court deems necessary." *Id.* Under the PLRA, relief sought must be "narrowly drawn, extend[] no further than necessary to correct the violation of the Federal right and [be] the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626. But as in *Dimartino*, Pittman does not seek the tailored injunctive relief required by the statute. "Instead, the petition seeks 'the most sweeping form[s] of relief . . . right off the bat.'" *Id.* (quoting *Money v. Pritzker*, 453 F. Supp. 3d 1103, 1126 (N.D. Ill. 2020).

Apart from compassionate release, the federal courts have inherent authority to grant bail to habeas petitioners. *Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001) (extending bail authority to those in immigration detention). This authority, however, is subject to tight constraints. As the Second Circuit summarized in *Mapp*, "this power is a limited one, to be exercised in special cases only." *Id.* It may be used "when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective[,]" *id.* (quoting *Ostrer v. United States*, 584 F.2d 594, 596 n.1 (2d Cir. 1978)), and requires a petitioner to demonstrate that the petition "raise[s] substantial claims[,]" *Mapp*, 241 F.3d at 226 (quoting *Grune v. Coughlin*, 913 F.2d 41, 44 (2d Cir. 1990)).

In order for bail to be a necessary remedy, as required by *Ostrer*, release from custody must be the only appropriate form of relief from the unconstitutional conditions a petitioner complains of. In *Gordon*, for instance, Judge Covello held under similar facts that the petitioner "could be housed in a cell rather than a dormitory and the BOP could be ordered to provide medical care. Thus, bail is not needed to make the habeas remedy effective." *Gordon*, No. 3:22-cv-53, at 6. Similarly, even accepting Pittman's allegations as true, his claims could be sufficiently

remedied with an order requiring medical care and improved sanitation. This Court therefore lacks the authority to order Pittman released on bail.

## IV. CONCLUSION

In accordance with the foregoing analysis, Respondent's motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Doc. 4, is **GRANTED**. Petitioner's petition for habeas corpus is **DENIED** without prejudice.

The case is **DISMISSED** and the Clerk is directed to close the file.

Because jurists of reason would not find it debatable that this Court lacks jurisdiction to grant the relief sought and that the petition fails to state a claim, any appeal from this ruling would not be taken in good faith. A certificate of appealability will not issue.[4]

It is SO ORDERED.

Dated: New Haven, Connecticut
      OCTOBER 13, 2022

                                    */s/ Charles S. Haight, Jr.*
                                    CHARLES S. HAIGHT, JR.
                                    Senior United States District Judge

---

[4] "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).